**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CRIMINAL NO. 1:21-cr-00017-APM** |
| | : | |
| v. | : | |
| | : | |
| **ANTHONY GRAY,** | : | |
|    aka "P" | : | |
|    aka "PLAYBOY" | : | |
| | : | |
| **Defendant.** | : | |

## STATEMENT OF OFFENSE

The parties in this case, the United States of America and the defendant, Anthony Gray, stipulate and agree that the following facts are true and accurate. These facts do not constitute all of the facts known to the parties concerning the charged offense; they are being submitted to demonstrate that sufficient facts exist that the defendant committed the offense to which he is pleading guilty: one count of Transportation of Minors, in violation of 18 U.S.C. § 2423(d).

### Statement of Facts

On May 10, 2018, the Metropolitan Police Department/Federal Bureau of Investigation Child Exploitation and Human Trafficking Task Force ("MPD/FBI CEHTTF") began an investigation into allegations that TERRELL ARMSTEAD (herein "ARMSTEAD") had sex trafficked a minor girl and other young women by force, fraud, or coercion. The minor victim (herein, "MV1") was 16 years old at the time ARMSTEAD began transporting her and an adult victim (herein, "AW1"), between Maryland, the District of Columbia, and Virginia, knowing that MV1 and AW1 would be engaging in commercial sex acts. As a result of the investigation, in May of 2019, ARMSTEAD was arrested and charged by criminal complainant with Sex

Trafficking of a Minor, in violation of 18 U.S.C. § 1591(a)(1) & (2), Sex Trafficking by Force, Fraud, or Coercion, in violation of 18 U.S.C. § 1591, and Obstruction of Enforcement of the Sex Trafficking Statute, in violation of 18 U.S.C. § 1591(d). On March 16, 2020, following a jury trial, ARMSTEAD was convicted of one count of violating 18 U.S.C. § 1591, Sex Trafficking by Force, Fraud, or Coercion.

During the course of the investigation involving ARMSTEAD, law enforcement learned that MV1 met ARMSTEAD when she was 16 years old, through AW1. On two occasions in March 2015 – one at a Motel 6 in Camp Springs, Maryland, and another at a Red Roof Inn in Alexandria, Virginia, ARMSTEAD brought AW1 and MV1 to these hotels for the purpose of engaging in commercial sex. On the first occasion, ARMSTEAD called ANTHONY GRAY, aka "P," aka "Playboy" (herein "DEFENDANT") from the hotel, and on the second occasion, he picked up the DEFENDANT on the way to the hotel. The DEFENDANT is the brother of ARMSTEAD's former girlfriend, and mother of his children, Laura Gray.

On both occasions, ARMSTEAD drove AW1 and MV1 to the hotels. On the first occasion in March 2015 at the Motel 6, ARMSTEAD drove AW1 to MV1's house in Maryland. ARMSTEAD then drove AW1 and MV1 to the hotel, a Motel 6, located in Camp Springs, Maryland. When MV1, AW1, and ARMSTEAD arrived at the hotel, ARMSTEAD called the DEFENDANT. While AW1 engaged in commercial sex acts in Motel 6 in Camp Springs, Maryland on that first occasion, MV1 did not.

On the subsequent occasion, during the weekend of March 14, 2015, ARMSTEAD drove AW1 and MV1 from Lusby, Maryland to a hotel located in Alexandria, Virginia for the purpose that AW1 and MV1 engage in commercial sex. On the way to the hotel, ARMSTEAD picked up the DEFENDANT from Maryland. This hotel is a Red Roof Inn, located in Alexandria, Virginia, and the records of this hotel corroborate that these offenses took place in March 2015.

Once the DEFENDANT, ARMSTEAD, AW1, and MV1 all arrived at the Motel 6 in Camp Springs, Maryland and then, on a later date, at the Red Roof Inn in Alexandria, Virginia,

the DEFENDANT discussed with MV1 and AW1 that they were going to be engaging in commercial sex acts with strangers. On one of these occasions, the DEFENDANT had a professional-looking camera and took pictures of AW1 and MV1 with that camera in order to post advertisements online, offering AW1 and MV1 for commercial sex. The DEFENDANT took some photographs depicting only AW1, some photographs depicting only MV1, and some photographs featuring both females together. The DEFENDANT instructed AW1 on how to pose for the advertisements, what to say when potential clients called the telephone number featured in the advertisements, and how much to charge for various sex acts. The DEFENDANT determined who the clients could be and the prices AW1 and MV1 could charge for various sex acts. In addition, the DEFENDANT showed ARMSTEAD how to post and load pictures, using his cellular telephone to post these pictures and advertisements on a webpage known as Backpage.com.[1] The advertisements featuring photographs of MV1 and AW1 were posted on the Alexandria, Virginia and Washington, D.C. Backpage pages.

While at the Motel 6 in Camp Springs, Maryland, AW1 noticed that the DEFENDANT brought with him a silver suitcase, which she believed contained a firearm.[2] The DEFENDANT took this suitcase with him when he and ARMSTEAD left the room.

At the Red Roof Inn in Alexandria, Virginia, the DEFENDANT and ARMSTEAD instructed MV1 not to loiter outside the hotel room, because it would draw attention from law enforcement, hotel staff, and guests. The DEFENDANT stated, "Standing outside is going to get us hemmed up." MV1 recalls the DEFENDANT stating, "That's the face that's going to get us all hemmed up," referring to her young appearance.[3]

---

[1] Backpage.com was known to law enforcement as a website used to post online sexual solicitation advertisements. The website was seized in April 2018 by the FBI.

[2] The Defendant admits that he did carry a firearm at times during the commercial sex enterprise; however, he disputes that a firearm was in this silver suitcase on this specific occasion. He does not dispute that AW1 believed that the silver suitcase he was carrying contained a firearm.

[3] "Hemmed up" is a phrase that means to be arrested, handcuffed, or otherwise detained by law enforcement.

In addition, while AW1 and MV1 were engaging in commercial sex acts in the Red Roof Inn in Alexandria, Virginia in March 2015, the DEFENDANT and ARMSTEAD sat in the car in the hotel's parking lot. MV1 and AW1 were instructed to text ARMSTEAD to let him know when a "date" arrived, the amount of money they would charge, and when the "date" left. ARMSTEAD and the DEFENDANT would then come to the hotel room. ARMSTEAD would collect the money that AW1 and MV1 earned by engaging in commercial sex acts. In terms of who financially benefitted from the commercial sex acts that AW1 and MV1 were engaging in, AW1 stated that at first, she was splitting the money 50/50 with ARMSTEAD, but that later she began to give the DEFENDANT one hundred percent of the money she collected from commercial sex clients. Over time, MV1 provided one hundred percent of the money she earned by being commercially sexually exploited to ARMSTEAD.

The DEFENDANT and ARMSTEAD brought AW1 and MV1 to the hotel in order to engage in commercial sex dates for their financial benefit at least three or four times in or about March 2015. In driving from Lusby, Maryland to Alexandria, Virginia, ARMSTEAD, AW1, the DEFENDANT, and MV1 traveled across the Woodrow Wilson Bridge, a portion of which is in Washington, D.C., in order to arrive at the Red Roof Inn.

Throughout March of 2015, both AW1 and MV1 believed that the DEFENDANT and ARMSTEAD had access to a firearm, which they believed the DEFEDANT brought with him to the hotels where MV1 and AW1 were engaging in commercial sex. MV1 believed that the DEFENDANT and ARMSTEAD also kept the firearm in the trunk of the car while she was inside the vehicle.

Furthermore, ARMSTEAD provided MV1 and AW1 with various types of drugs and alcohol before, during, and after the times when AW1 and MV1 would engage in commercial sex.

On one occasion in March of 2015, the DEFENDANT, ARMSTEAD and MV1 took AW1 to purchase cocaine for the group. The DEFENDANT provided AW1 with the money to purchase the drugs. Rather than returning with the cocaine, AW1 took the money and the drugs and left in a car with another individual. The DEFENDANT and ARMSTEAD attempted to chase the vehicle in which AW1 was riding, with MV1 and the firearm in their car. AW1 was able to get away from the DEFENDANT and ARMSTEAD, who later showed up at the residence where she was staying. AW1 was fearful that the DEFENDANT and ARMSTEAD were going to "shoot up the house" in an attempt to get their money and/or drugs back. MV1, who directed the DEFENDANT and ARMSTEAD to the residence where AW1 was staying, was scared that the DEFENDANT and ARMSTEAD were going to kill someone in an effort to get the drugs back. After leaving the residence, the DEFENDANT and ARMSTEAD told MV1 that she would have to work off the money that AW1 "stole." When MV1 realized that she was alone with the DEFENDANT and ARMSTEAD, she began to fear for her physical safety. MV1 felt that she could not go home until she had made back the money that AW1 stole. A few days later, when AW1 returned to the group, she began to give the DEFENDANT all of the money that she earned, in part to pay off this "debt."

Law enforcement obtained online sexual solicitation advertisements, which featured pictures of AW1 and MV1 during the course of the investigation. These advertisements, which offered MV1 and AW1 for commercial sex, were posted in the Washington, D.C., Northern Virginia, and Southern Maryland sections of Backpage.com, between March 18, 2015 and April 4, 2015. By way of example, one of the advertisements reads as follows:

> Gorgeous Mercedes Is Back And For A Limited Time – 23: Hey boy's it's Sophia & Mercedes, your number one duo. We are back to pick up where we left off. So stop wasting

time with the one's that don't give you what your looking for and is a big wast of time. So pick up the phone and call us now and end your constant look for what you need!!! Mercedes (443) 404-6564.[4]

These online sexual solicitation advertisements were posted on Backpage.com using an account associated with the email address lovediamondmonroe@yahoo.com. Law enforcement obtained a search warrant for the email account lovediamondmonroe@yahoo.com. This email account was created on January 7, 2015, with the user name "Diamond Monroe" and phone number (240) 899-0373. A subpoena was sent to AT&T for subscriber information associated with this telephone number. The returns from AT&T provided that the user of that phone number, and the name of the billing party, was "Anthony Gray," the DEFENDANT.

Adult Witness 2 (herein "AW2") met the DEFENDANT when she was living in Illinois. The DEFENDANT would drive AW1 and AW2 from parts of Maryland to an area in Northwest, Washington, D.C., known as the "track" or the "Blade"[4] for the purpose of AW1 and AW2 engaging in commercial sex. AW1 and AW2 worked for the DEFENDANT on and off for years. AW2 was aware that the DEFENDANT carried a firearm at times in Illinois. AW1 advised that, even when the DEFENDANT was in custody in the DC jail, AW1 and AW2 would communicate with the DEFENDANT through jail calls and the DEFENDANT would continue to instruct AW1 and AW2 on when and where to work. AW1 and AW2 both have a tattoo on their feet of the playboy bunny symbol, with "Playboy" written underneath.[5]

---

[4] This advertisement was posted on March 22, 2015. (http://washingtondc.backpage.com/FemaleEscorts/gorgeous-mercedes-is-back-and-for-a-limited time/17416769).

[5] The "track" is a term used to describe an area for outdoor prostitution. The Washington, D.C. The "track" is located in the area of 12th Street and K Street, Northwest, Washington, D.C. The Metropolitan Police Department had several police reports of AW1 (one report with AW2) being observed on the "track" and engaging in commercial sex. The timeframe of these report is consistent with the time AW1 and AW2 were working with the DEFENDANT.

These tattoos on AW1 and AW2 can be seen in the pictures posted on their online sexual solicitation advertisements.[6]

Respectfully,

CHANNING D. PHILLIPS
UNITED STATES ATTORNEY

*/s/ Amy E. Larson*
Amy E. Larson
Kenya K. Davis
Elizabeth Hutson
Assistant United States Attorneys

---

[6] Traffickers put tattoos of their own names on their victims to signify that they are property of the trafficker.

## DEFENDANT'S ACKNOWLEDGMENT

I, Anthony Gray, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 1/26/22

Anthony Gray
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense, and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 1/26/22

David Benowitz, Esq.
Attorney for Defendant