**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>ANTHONY GRAY, )<br>)<br>Defendant. ) | Case No. 1:21-cr-17-APM-1 |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

## I.   INTRODUCTION

Anthony Gray, by and through undersigned counsel, respectfully files this Memorandum in Aid of Sentencing. Mr. Gray comes before this Court humbled, contrite, and extraordinarily remorseful for the actions that have brought him before it following his acceptance of responsibility upon entering a plea of guilty to one count of Facilitating Travel for Illicit Sexual Contact, in violation of 18 U.S.C. § 2423(d). *See generally* PSR. He deeply regrets the choices he made that have led him to this point in his life.

*Anthony Gray's Background*

Mr. Gray is thirty-nine (39) years old and was born in Cheverly, Maryland. His father was an enlisted serviceman in the United States Air Force ("USAF") at the time of his birth, and the family resided on Andrews Air Force Base in Morningside, Maryland. *See id*. Mr. Gray suffered through a rough childhood, where whippings were a standard punishment for him. *See id*. at ¶ 94. █████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

1

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

Mr. Gray, his mother, and siblings relocated to Clifton, Virginia. *See id*. Mr. Gray's father continued to provide for the family, but took on a limited role in the lives of his children from that point on. *See id*. Mr. Gray's mother had to reenter the workforce after the separation, leaving more of the responsibility of raising Mr. Gray and his siblings to Mr. Gray's maternal grandparents. *See id*. Mr. Gray's parents have never officially divorced, but remain separated to this day.

Mr. Gray's relationship with his father has never really improved and he only speaks to him sporadically. *See id*. at ¶ 98. Mr. Gray's mother is suffering from colon cancer and is due for a medical procedure related to it in the near future. *See id*. at ¶ 99. Mr. Gray's siblings reside throughout Virginia and Maryland. *See id*. at ¶ 100. Mr. Gray has five (5) children from previous relationships. *See id*. All of his children live in the area. *See id*. Mr. Gray maintains good relationships with the mothers of his children with the exception of one, who took their daughter and moved away, without informing Mr. Gray of where they were going. *See id*. Mr. Gray provides for his children as best he can, without a court order to do so. *See id*. His incarceration has made it difficult to continue to provide for them. *See id*. at ¶ 113.

Mr. Gray struggled with his education, having reading problems while in elementary school. *See id*. at ¶ 122. He dropped out of high school after two (2) years, during the tenth grade, having lost interest in his education. *See id*. Mr. Gray started General Equivalency Diploma ("GED") classes at Prince George's County Community College in Largo, Maryland, but quit as he had trouble focusing and continued to underperform in a classroom setting. *See id*. Mr. Gray is still lacking his high school diploma and/or GED credentials. *See id*.

### *Sentencing Request*

Based upon Mr. Gray's personal history and characteristics, the nature and circumstances of the offense, his limited criminal history, and the unlikelihood of recidivism, Mr. Gray respectfully requests that the Court impose a sentence of seventy (70) months' incarceration. Such a sentence would be "sufficient, but not greater than necessary," to achieve the legitimate purposes of sentencing. *See* 18 U.S.C. § 3553(a).

## II.   THE LEGAL FRAMEWORK OF AN ADVISORY GUIDELINE RANGE

While this Court must still correctly calculate the guideline range, *see Gall v. United States*, 552 U.S. 38, 49 (2007), it may not treat that range as mandatory or presumptive, *see id*. at 51; *see also Nelson v. United States*, 555 U.S. 350, 352 (2009), but as "one factor among several" to be considered in imposing an appropriate sentence under § 3553(a). *Kimbrough v. United States*, 552 U.S. 85, 90 (2007). The Court must "consider all of the § 3553(a) factors," *Gall*, 552 U.S. at 49-50, "make an individualized assessment based on the facts presented," *id.*, and explain how the facts relate to the purposes of sentencing. *See id*. at 53-60; *see also Pepper v. United States*, 131 S. Ct. 1229, 1242-43 (2011). The Court's "overarching" duty is to "'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Kimbrough*, 552 U.S. at 101; *Pepper*, 131 S. Ct. at 1242-43.

In order to ensure that the guidelines are truly advisory and constitutional, this Court has the authority to disagree with a guideline as a matter of policy. Because "the Guidelines are now advisory . . ., as a general matter, courts may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines." *Kimbrough*, 552 U.S. at 101-02 (internal punctuation omitted) (*citing Rita v. United States*, 551 U.S. 338, 351 (2007) (holding that district courts may find that the "Guidelines sentence itself fails properly to reflect § 3553(a) considerations").

Additionally, "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). Permitting sentencing courts to consider the widest possible breadth of information about a defendant "ensures that the punishment will suit not merely the offense but the individual defendant." *Pepper* 131 S. Ct. at 1240 (citing *Wasman v. United States*, 468 U. S. 559, 564 (1984)).

In this regard, "the district court's job is not [even] to impose a reasonable sentence. Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2)." *United States v. Foreman*, 436 F.3d 638, 644, n.1 (6th Cir. 2006). Accordingly, "if a district court were explicitly to conclude that two sentences equally served the statutory purpose of § 3553, it could not, consistent with the parsimony clause, impose the higher." *United States v. Ministro-Tapia*, 470 F.3d 137 (2d Cir. 2006).

### III. THE U.S. SENTENCING GUIDELINES

According to the plea agreement, the parties agree that the following Sentencing Guidelines sections apply:

**2021 Guidelines**

18 U.S.C. § 115(a)(1)

    USSG § 2G1.3 – Base Offense Level ............................................................24

    USSG § 2G1.3(b)(3)(A) – Specific Offense Characteristic ..........................+2
    Use of interactive computer service.

    USSG § 2G1.3(b)(4)(B) – Specific Offense Characteristic ..........................+2
    Commission of commercial sex acts.

                                                                         Subtotal .....................28

    USSG §3E1.1(a) – Acceptance of Responsibility ........................................-2

    USSG §3E1.1(b) – Acceptance of Responsibility ........................................-1

**TOTAL OFFENSE LEVEL** ............................................................................**25**[1]

---

[1] The Probation Office considered but did not apply an additional two-level increase under U.S.S.G. §2G1.3(b)(2)(B), which would apply if the Court finds Mr. Gray unduly influenced a minor to engage in prohibited sexual conduct. *See PSR ¶ 52 at fn. 4.*

**Mr. Gray's Criminal History is Overrepresented**

Mr. Gray respectfully objects to the criminal history calculation in the PSR as it overrepresents the nature and seriousness of his background. The PSR indicates Mr. Gray has a criminal history score of thirteen and a criminal history category of VI for sentencing purposes. *See* PSR at ¶ 69, 71. Along with the total offense level of 25, this produces an advisory guidelines range of 110-137 months. *See id.* at ¶ 67. Mr. Gray objects to the following criminal history points:

- Two (2) criminal history points for a conviction for Possession of Marijuana. *See* PSR at ¶ 57. *See also* U.S.S.G. 4A1.3(b)(1).

- One (1) criminal history point for Possession of Marijuana. *See* PSR at ¶ 59. *See also* U.S.S.G. 4A1.3(b)(1).

- One (1) criminal history point for Possession of Drug Paraphernalia. *See* PSR at ¶ 63. *See also* U.S.S.G. 4A1.3(b)(1).

- One (1) criminal history point for Possession of Drug Paraphernalia. *See* PSR at ¶ 64. *See also* U.S.S.G. 4A1.3(b)(1).

- Two (2) criminal history points for the Driving on a Suspended License. *See* PSR at ¶ 68. *See also* U.S.S.G. 4A1.3(b)(1).

Mr. Gray respectfully submits that only five (5) criminal history points should be attributed, which would correlate to a Criminal History Category of III. At an offense level of 25 with a Criminal History Category of III, the advisory guideline range would be 70-87 months.

**IV.    18 U.S.C. § 3553(A) FACTORS**

Section 3553(a)(1) provides a "broad command to consider 'the nature and circumstances of the offense and the history and characteristics of the defendant.'" *Gall*, 552 U.S. at 50 n. 6.

The command is consistent with the Supreme Court's observation that "the punishment should fit the offender and not merely the crime." *Pepper*, 131 S. Ct. at 1240 (*citing Williams v. New York*, 337 U.S. 241, 247 (1949)). The command is similarly consistent with Congress' express directive that "[n]o limitation shall be placed on the information" a sentencing court may consider "concerning the [defendant's] background, character, and conduct." *Id.* (*citing* 18 U.S.C. § 3661).

### A. The Nature and Circumstances of the Offense.

Mr. Gray's involvement in the instant offense is both inexcusable and regretful. Mr. Gray was working diligently to improve his life, including holding a full-time job. He deeply regrets the impact his conduct has had on the victims, their families, and on his own family, especially his mother, LaVora Gray.

This terrible lapse in judgment is something Mr. Gray will have to live with for the rest of his life. The consequences already experienced have been immense, as they include the incredible damage to Mr. Gray's reputation. His devastation and disappointment will only be further exacerbated once he registers as a sexual offender under the Sex Offender Registration and Notification Act ("SORNA") for a period of twenty-five (25) years, as required.

Mr. Gray makes no excuses for his actions. He finds himself "full of remorse, regret, and shame." *See* Exhibit A. He regrets the impact this case has had on his reputation and life and is working to right his wrongs. *See id.* Moreover, he regrets, "from the deepest depths of [his] heart," the impact his actions have had on the victims and their families. *Id.*

Mr. Gray understands the magnitude of his actions but has also developed a much better understanding of himself than he ever has before. *See id.* "The reality is that I did some

unthinkable irreparable damage and will stand in front of you ready to take full responsibility." *See id.*



Mr. Gray is committed to living with a newfound purpose to do good, be good, and to no longer take life for granted. *See id.* As Mr. Gray writes, he is "done with the cycle of [his] life that kept landing [him] in a place [he] hated and away from the people [he] loves the most." *See id.* One of the activities Mr. Gray has taken up is reading, and he tells the Court, "The more I read I seen I had to fix this problem within me before I could ever move forward," and he realized just how much of his life he "lost and threw away living a life that of the streets and jail." *See id*. Mr. Gray also has deep understanding of the pain he caused others by his actions, as he tells the Court "the more I read the more I discovered how wrong and disturbing the lifestyle I lived was, and how it destroyed the people who lived it." *See id*. Mr. Gray promises the Court that "the next time you see or hear Anthony Gray, it will be for doing good … and for trying to stop and help the young of tomorrow from making the same decisions that I did." *See id.*

### B. Mr. Gray's History and Characteristics.

Mr. Gray's life has been defined by hardship, adversity, and improving himself. Family of Mr. Gray speak with one voice as they talk about a man who has been through a lot and was turning his life around.

Mr. Gray's mother, LaVora Gray, writes about her firstborn son. *See* Exhibit B. Ms. Gray is an accountant by trade, with degrees in Business Administration and Accounting. *See id*. Ms. Gray was just sixteen years old when she gave birth to Mr. Gray. *See id*. Mr. Gray's father was eighteen at the time. *See id*. The couple tried to make things work by getting married and starting a family. *See id*. Mr. Gray's father joined the military. *See id*. The marriage failed and Mr. Gray witnessed many of the problems that lead to his parents' separation. *See id*. Ms. Gray became a single mother of six (6) children, with Mr. Gray as the oldest child. *See id*. Ms. Gray tried her best but acknowledges that as a young mother she did many things wrong. *See id*. Ms. Gray has always taught her children to be good people, to help others, to do the right thing, and to love God. *See id*. The Gray family is one that loves and protects children. *See id*. Adults in the family alter their schedules to make sure that someone will always be available to care for the children in the family. *See id*. Ms. Gray is devastated and disappointed in Mr. Gray's involvement in this case. *See id*. Ms. Gray knows Mr. Gray has struggled through many aspects of his life, but she never thought he could be involved in something like the instant case. *See id*. Ms. Gray knows Mr. Gray to be a good, lighthearted person. *See id.* He is funny, playful, and capable of diving into deep conversations over books, business ideas, and his inventions. *See id*. Ms. Gray believes Mr. Gray is liked by most and loved by many, because he is a truly good person. *See id.* Mr. Gray has made "some bad choices and stupid decisions for which he has paid dearly." *Id*. Ms. Gray can say for certain that Mr. Gray has learned from his mistakes, is changing his focus, and is trying to figure out the mark he wants to make on this world. *See id*.

Mr. Gray has consistently apologized for his mistakes and how they have affected others, especially his family, his mother, and children. *See id*. Mr. Gray has begun to focus his natural talents on drawing, inventing, art, and reading. *See id*. Ms. Gray has seen binders full of

inventions and ideas dreamt up by Mr. Gray and Ms. Gray knows Mr. Gray has dedicated himself to bringing those ideas to fruition. *See id*. Mr. Gray has struggled with finding and keeping jobs because of his criminal record, but he keeps trying and does not give up. *See id*. Mr. Gray found opportunity in the job market due to the COVID-19 pandemic and was about to transition from a temporary to a full-time position before his arrest in this matter ended his impending employment. *See id*. Despite his arrest, Mr. Gray made sure to contact his supervisor to let him know what had happened and to apologize that he would not be able to work for him. *See id*. Mr. Gray's supervisor said they would hold Mr. Gray's job for him. *See id*. Ms. Gray hopes this Court sees that Mr. Gray is a good person that he has overcome a lot in life to get to where he was before his arrest. *See id*. Mr. Gray can be a contributor to society and his community. *See id*. Ms. Gray fears that additional time in prison will not be in the best interest of his children, his family, or his community. *See id*. Ms. Gray believes society would be better served with Mr. Gray in it. *See id*. Mr. Gray's father is in kidney failure, requiring dialysis three (3) times per week. *See id*. Ms. Gray is facing a procedure at the end of June, and likely more procedures due to complications related to her colon cancer. *See id.* Mr. Gray took care of Ms. Gray when he was home, making her meals and tending to her. *See id.* Mr. Gray's incarceration has caused Ms. Gray much stress and hardship. *See id*. Mr. Gray's presence in her home assured her she was being cared for and checked in on during the difficult nights gave her opportunity to rest, rest she is greatly missing with Mr. Gray's incarceration. *See id.* Ms. Gray does not think there is anything for Mr. Gray to learn from more prison time except for more hardship. *See id.* Mr. Gray has learned his lesson, is disappointed in himself, and is ready to make amends and be present for his children. *See id.*

Mr. Gray's youngest sister, Nina Gray, writes about the big brother she always looked up to, Mr. Gray. *See* Exhibit C. As a child, Ms. Gray would play video games with her siblings and when they got stuck on puzzles, they always turned to Mr. Gray to figure them out. *See id.* Mr. Gray would always help them solve problems like that, and would even help them better themselves by mediating their disputes. *See id.* Ms. Gray recalls a time in elementary school when her father could not attend the "Daddy Donuts" event at her school. *See id.* Mr. Gray could tell it was bothering her, so he offered to step in and come in his place, which made Ms. Gray very happy. *See id.* Ms. Gray knows that life cannot remain as simple as it was during childhood and that people grow up, face happiness, hardship, sorrow, and unfortunately, they sometimes make bad decisions. *See id.* Ms. Gray knows that Mr. Gray is a good person and this incident is unlike him. *See id.* Ms. Gray has always known Mr. Gray to be good to children and kind to them. *See id.* Ms. Gray believes it is unfortunate Mr. Gray did not use his better judgment and refuse to associate himself with the conduct that led to his conviction. *See id.* This incident was not only a disappointment to Mr. Gray but also to his family. *See id.* Ms. Gray believes Mr. Gray is redeemable, has learned from his mistakes, and can do better. *See id.* Mr. Gray is capable of listening to criticism, self-reflection, and change, which she has seen first-hand. *See id.* Mr. Gray has made some bad decisions in his life and he has expressed remorse to Ms. Gray and their mother about those decisions. *See id.* Ms. Gray believes that if Mr. Gray was given leniency by the Court, he would return to his job and become a better contributor to society. *See id.* Ms. Gray believes in her brother and hopes this Court will allow Mr. Gray the opportunity to prove he is on the right path to being a productive member of society. *See id.*

Mr. Gray's uncle, Timothy Hiligh, writes about his nephew. *See* Exhibit D. Mr. Hiligh is a Certified Information Security Manager for Booz Allen, supporting the United States Army

Chief Information Officer. *See id.* Mr. Hiligh's job is to help keep Army Information Systems safe and protected from our adversaries, to ensure our warfighters have access to resources as they need them to stay mission ready. *See id.* Mr. Hiligh has maintained a top-secret security clearance for more than thirty (30) years and has managed personnel of various backgrounds. *See id.* Mr. Hiligh believes himself to be a great judge of character, and employs that judgement when making decisions that impact national security. *See id.* Mr. Hiligh knows his nephew to be a loving father, son, and uncle that has made some bad decisions, but he is not a danger to society that must be segregated from others. *See id.* Mr. Hiligh has never known Mr. Gray to be a violent person, nor one that uses intimidation or force to get people to do things against their will. *See id.* Mr. Hiligh believes that Mr. Gray did not show the maturity and leadership he knows him to be capable of when he became involved in the instant case. *See id.* Mr. Gray has already served two years in this case, time he surely has spent reflecting on his role in this situation and how he must conduct himself moving forward. Mr. Hiligh knows Mr. Gray takes responsibility for what he has done. *See id.* Mr. Hiligh believes Mr. Gray is an individual who will come back from prison and go on to do great things. *See id.* Mr. Gray has a good heart and is loved by many and Mr. Hiligh respectfully requests this Court to show Mr. Gray the most leniency allowable under the law so that Mr. Gray may start the process of becoming a positive member of his community. *See id.*

Sherry Nicholson writes about her cousin Mr. Gray. *See* Exhibit E. Ms. Nicholson is the owner of The Precision Barber Lounge and Caring Heart. *See id.* Ms. Nicholson and Mr. Gray grew up close, and have remained close. *See id.* Mr. Gray's children frequently visit Ms. Nicholson and her children. *See id.* Ms. Nicholson has always known Mr. Gray to have a loving personality, an infectious laugh, and a heart of gold. *See id.* Mr. Gray has been there for Ms.

Nicholson, her children, and her grandmother. *Id*. Ms. Nicholson knows Mr. Gray to be the kind of guy to drop everything to help, be it going to the store or assisting an elderly relative. *See id.* Although Mr. Gray has made mistakes, Ms. Nicholson has never stopped seeing the good and potential in Mr. Gray. *See id.* Mr. Gray looked forward to becoming a barbershop owner and barber, and Ms. Nicholson was planning on helping him with that goal, as she is a barbershop owner herself. *See id.* Ms. Nicholson thinks Mr. Gray has learned a lesson from his mistake in the instant case and will be a productive citizen in the community. *See id.*

Mr. Gray's aunt and uncle, Kenneth and Marie Hiligh, write together about their nephew. *See* Exhibit F. Mr. Gray lived with the Hilighs for several years. *See id.* The Hilighs know Mr. Gray to be a very polite and well-mannered young man. *See id.* Mr. Gray watched out for two of their daughters, steering them in the right direction. *Id*. Both of their daughters have since graduated college. *See id.* Mr. Gray's presence and guidance lead one of the daughters to excel in her education. *See id.* The Hilighs reiterate that Mr. Gray is a considerate person, who went out of his way to help their daughters excel in life. *See id.* They pray for the possibility that Mr. Gray can become involved in a program that helps other young kids do the right thing. *See id.*

Mr. Gray's grandmother, LaVora Hiligh, writes about her beloved grandson. *See* Exhibit G. Ms. Hiligh is a 77-year-old retiree from New Hope Housing, a homeless shelter in which she proudly served as the food service supervisor. *See id.* Ms. Hiligh's heart breaks for her mother, who is ninty-five (95) years old and unsure if she will ever see her great-grandson a free man again before she passes. *See id.* Ms. Hiligh also thinks of Mr. Gray's sons, who need their father in their lives. *See id.* Ms. Hiligh knows Mr. Gray's family loves him and hopes for him to be home soon. *See id.* Ms. Hiligh believes Mr. Gray has mended his ways and has the potential to be a great asset to society if given the opportunity to prove himself. *See id.*

13

Mr. Gray's love and commitment has been an example to his family throughout his life. While those closest to him acknowledge his mistake that brought him before this Court, they remain steadfast in their love and support of Mr. Gray, secure in their conviction for a man who is dedicated, caring, and thoughtful; exactly the type of person who is deserving of this Court's leniency.

### C. Mr. Gray Poses Little Risk of Recidivism.

Of all the purposes of sentencing, the need to protect the public from further crimes of the defendant is one of great practical concern and is the most capable of being measured.

Mr. Gray is thirty-nine (39) years old. This conviction will result in him being registered as a sex offender under SORNA for twenty-five (25) years, informing the community and preventing him from committing any similar acts. More importantly, Mr. Gray's character, deep remorse, and courage to hold himself accountable ensure he will never again commit any such transgression. Mr. Gray has struggled through many setbacks in his life and is coming into his own as a productive member of society.

Mr. Gray does not make excuses or attempt to minimize his behavior. He has relied on his commitment to bettering himself and the support of his family to move forward despite his regret and the pending sentencing in this case. Mr. Gray does not fit the archetype of a person who will commit new criminal offenses or recidivate. And because of the reinvigorated role of the judiciary in sentencing, judges can now impose sentences that take research into consideration to more effectively impose sufficient, but not greater than necessary, sentences.

The judiciary's bolstered role is especially important given the Sentencing Commission's own findings that "there is no correlation between recidivism and Guidelines' offense level. Whether an offender has a low or high guideline offense level, recidivism rates are similar.

While surprising at first glance, this finding should be expected, as the Guidelines' offense level has long been recognized as not intended or designed to predict recidivism." *U.S. Sentencing Comm'n, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* at 15 (May 2004) (hereinafter *Measuring Recidivism*). Thus, the guidelines are at odds with 18 U.S.C. § 3553(a)(2)(C). Accordingly, *United States v. Booker*, 543 U.S. 220 (2005), has freed the judiciary to remedy this inconsistency.

### D. Mr. Gray's Punishment and SORNA Registry is Adequate Deterrence to Others.

Section 3553(a)(2)(B) requires the Court to consider "the need for the sentence imposed to afford adequate deterrence to criminal conduct." There is no need for further personal deterrence in this case, as Mr. Gray has served several years of incarceration already and will have to register as a sex offender under SORNA for a period of twenty-five (25) years. Arguably, the government has achieved its goal of personal deterrence simply by arresting and convicting Mr. Gray.

Mr. Gray understands well the nature of his misconduct. At the time of the offense, he failed to appreciate the gravity of the situation he was getting involved in and did not listen to his experience gathered over a life of overcoming adversity. However, at only thirty-nine (39) years old, Mr. Gray will experience the impact of this case for the rest of his life. He carries a heavy burden in his heart and hopes that someday he will be forgiven for what he has done. He makes no excuses and is confident this Court's judgment will be considerate and fair.

### E. Avoiding Unwarranted Sentencing Disparities.

An additional factor to consider is the "need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

Given the above discussed findings, it is important to highlight that there are important and significant differences between Mr. Gray's case and others sentenced on similar charges that justify a shorter sentence. For example, in *United States v. Carl*, 461 F. App'x. 1 (D.C. Cir. 2012), Mr. Carl was convicted of Traveling in Interstate Commerce with the Intent to Engage in Illicit Sexual Conduct, in violation of 18 U.S.C. § 2423(b), and sentenced to forty-six (46) months' imprisonment, the bottom of the guideline range, relying heavily on the "need to avoid unwarranted sentencing disparity among defendants." *Id.* (citing 18 U.S.C. § 3553(a)(6)). Unlike in Mr. Gray's case, Mr. Carl was motivated by the act of engaging in sexual conduct with a minor, not facilitating travel for purposes of receiving a financial benefit.

In a similar case, the court in *United States v. Russell*, 600 F.3d 631, 632 (D.D.C. 2010), also imposed a prison term of forty-six (46) months where the defendant pled guilty to one count of Traveling in Interstate Commerce with the Intent to Engage in Illicit Sexual Conduct, in violation of 18 U.S.C. § 2423(b). In clear contrast to Mr. Gray's case, Mr. Russell's charged stemmed from Mr. Russell performing a solo sex act live via webcam to an undercover officer purporting to be a young girl of thirteen (13) years of age, subsequently inviting the undercover officer to have sex with him, and then traveling to an address to meet up with the undercover officer to engage in sexual conduct. *See id.* at 633-34. Again, in Mr. Gray's case, he was carelessly facilitating travel for purposes of receiving a financial benefit, not motivated by or actually engaging in sexual conduct with a minor.

Another helpful case to consider is *United States v. Nelson*, 979 F. Supp. 2d 123, 127 (D.C. Cir. 2013). In *Nelson*, 979 F. Supp. 2d 123, Mr. Nelson pled guilty to one count of Traveling in Interstate Commerce to Engage in Illicit Sexual Conduct, in violation of 18 U.S.C. § 2423(b). The court imposed a prison term of twenty-five (25) months. *See id.* In contrast to the

16

case at bar, after chatting online about engaging in sexual conduct with a minor and making plans to meet up, Mr. Nelson traveled from Virginia to D.C. in furtherance of the plan to engage in sexual conduct with a minor. *See id.* at 126. Yet again, unlike Mr. Nelson, Mr. Gray was motivated by financial gain, not to engage in sexual conduct with a minor. While Mr. Gray by no means desires to downplay the pain that he has caused the victims in this case, in making a determination on sentencing, his conduct must be viewed in light of cases such as those discussed above, where the defendant sought to or did travel to engage in sexual conduct with a minor.

Accordingly, Mr. Gray, by and through undersigned counsel, respectfully requests that the Court impose a sentence of seventy (70) months of incarceration.

Respectfully submitted,

_____/s/_____
David B. Benowitz
Bar # 451557
*Counsel for Anthony Gray*
Price Benowitz LLP
409 7th Street, NW,
Suite 200
Washington, DC 20004
O: (202) 417-6000
M: (202) 271-5249
F: (202) 664-1331
David@PriceBenowitz.com

## **CERTIFICATION**

I hereby certify that on this 5th day of July 2022, I caused a true and correct copy of the foregoing Defendant's Memorandum in Aid of Sentencing to be delivered via CM/ECF to all parties in this matter

_____/s/_____
David Benowitz
